Ann NOLAN, Plaintiff-Appellant,

v.

Ben RAMSEY et al.,
Defendants-Appellees.

George H. HICKMAN,
Plaintiff-Appellant,

v.

Ben RAMSEY et al.,
Defendants-Appellees.

No. 77–2251.

United States Court of Appeals,
Fifth Circuit.

June 22, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1979.

David R. Richards, Austin, Tex., for plaintiff-appellant.

John L. Hill, Atty. Gen., David M. Kendall, Jr., Asst. Atty. Gen., for R. R. Comm.

J. David Hughes, Asst. Atty. Gen., Donald S. Thomas, Jr., Austin, Tex., for defendants-appellees as individuals.

Joyce Beasley, Asst. Atty. Gen., Transp. Div., Austin, Tex., for Railroad Comm. of Tex.

Before WISDOM, CLARK and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellants attack the validity of a reporting standard established by the Texas Railroad Commission which abolished their positions as reporters. The trial court denied relief and we affirm.

Appellants Ann Nolan and George Hickman are court reporters formerly employed by the Transportation Division of the Railroad Commission of Texas (the Commission), a state agency having broad regulatory authority over the oil and gas, transportation, and gas utilities industries. In May of 1975, the Commission determined that its official record in contested proceedings should be reported by stenographic means, i. e., by shorthand or stenotype machine, and the Commission issued an order to this effect. In keeping with this determination, the appellants were terminated as employees of the Commission because their stenomask reporting technique[1] no longer complied with the Commission's reporting standards.

Shortly thereafter, appellants instituted this suit against the three Commissioners and the Director of the Transportation Division, in both their official and individual capacities, alleging, inter alia, that the Commission's actions violated appellants' due process and equal protection rights under the Fourteenth Amendment to the Constitution. Appellants requested injunctive and monetary relief pursuant to 42 U.S.C. section 1983 (1976).

---

1. Stenomask reporters make no written notes of the proceedings they report. Instead, they make oral recordings by speaking into a sound proof cover containing a microphone. These recordings are then used to make a transcript.

The district court denied the appellants' applications for a preliminary injunction, holding that appellants had no "property" or "liberty" interests protectible under the Due Process Clause and that no violation of the Equal Protection Clause had been shown. In response to appellants' contention that the Commission's actions were based on its erroneous conclusion that changes in state law required it to discontinue the use of stenomask reporters, the trial court stated that such matters were appropriate for determination by the Texas courts.

The appellants counsel then instituted suit in the name of appellant Hickman in a state district court attacking the validity of the Commission's rule regarding standards of reporting. The state court decreed that, while state law did not prohibit the use of stenomask reporting, the Commission's rule permitting only stenographic reporting was valid.

Subsequently, the district court tried the case on the merits and denied relief to appellants. The court again rejected the appellants' due process claims. Addressing appellants' equal protection claim, the court applied the "minimal rationality" test, and held that appellants failed to carry their burden of showing that the Commission's presumptively valid rule specifying reporting standards is totally arbitrary and that a preference for stenographic records is without any factual foundation. Appellants appeal from the final judgment in favor of the Commission.

## I.  EQUAL PROTECTION

Appellants argue that the Commission's rule eliminating stenomask reporters has no relationship to its purpose. As a part of its reason for eliminating stenomask reporters, the Commission stated that a change in Texas law required it to record its proceedings by means of "full shorthand notes" in conformity with Tex.Rev.Civ.Stat.Ann. art. 2324 (Supp.1978). Appellants then obtained a declaratory judgment from a Texas court stating that the Commission may, but is not required to, continue the use of stenomask reporting. Appellants contend that, since the Commission's decision was based on an erroneous interpretation of Texas law, once the reason for excluding stenomask reporters no longer existed, the continued exclusion of them would be without any rational basis.

In this context, the requirements of equal protection are not so exacting: "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976). *Accord, Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Although the Texas declaratory judgment makes clear that the Commission was incorrect in its assessment of Texas law, it does not establish that elimination of stenomask reporting is without rationality. The exclusive use of stenographic reporting is consistent with the rules applicable in Texas courts, where stenomask reporting may not be used. Tex.Rev.Civ.Stat.Ann. art. 2324 (Supp.1978). We cannot conclude that the Commission acted arbitrarily by conforming its reporting standards to those of the district courts of Texas. Moreover, the Commission could reasonably decide that the stenographic method is preferable in that it provides for a written record created simultaneously to the proceedings or that it is preferable because it is not subject to unknown mechanical malfunctions. Our standard of review is not so strict that we will hold the Commission to the one reason which it gave for its decision, especially when these other reasons are entirely consistent and may have been mentioned but for the assumed compulsion of state law. *Cf. New Orleans v. Dukes*, 427 U.S. at 305, 96 S.Ct. 2513 (Court looks to factors which the city "could reasonably" consider as a basis for classification). We therefore conclude that the Commission's

decision to discontinue stenomask reporting did not violate the appellants' rights to equal protection of the law.

## II. DUE PROCESS OF LAW

Appellants also contend that the Commission's rule deprives them of liberty and property interests without due process of law.

### A. *Liberty Interests*

■ In addition to being terminated from their jobs with the Commission, appellants are barred, along with all other stenomask reporters, from privately contracting to report contested proceedings before the Commission. Appellants do not contend that the Commission's rule has implicated a liberty interest by the stigmatizing effect of losing their jobs. *See, e. g., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Since the decision here was to discontinue all stenomask reporting, the individual competency or integrity of the appellants is not in question. Thus, this case is unlike those cited by appellants where an individual is singled out and denied the right to pursue a profession or occupation based upon personal characteristics. *See, e. g., Willner v. Committee on Character*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926).

■ The Commission's rule excluding stenomask reporters was neither prompted by, nor aimed at the appellants. It was instead a quasi-legislative decision that the stenographic reporting method is preferable to the stenomask method. *Compare Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915) *with Londoner v. Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908). Inasmuch as appellants are attacking the quasi-legislative discretion of the Commission in promulgating this general rule, the question must be analyzed under the *rubric* of substantive due process.

■ The days of federal courts closely scrutinizing the wisdom of ordinary legislative judgments are over. "The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1954). In *Williamson*, the Court refused to strike down a state law forbidding opticians from participating in certain eye care activities. Likewise, in *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1962), the Court upheld a state law excluding everyone except practitioners of law from engaging in debt adjusting. In like manner and for the same reasons the Commission's rule is not violative of the equal protection clause, we cannot say that the rule is irrational under the due process clause.

### B. *Property Interest*

■ Finally, appellants were not entitled to a hearing based upon their alleged property interests, on the question of whether or not the Commission should discontinue the practice of stenomask reporting. We note again that the Commission was not deciding the competency of the appellants or any other individuals. The subject of inquiry was the basic merits and demerits of stenomask reporting as compared to stenograph reporting. This determination is quasi-legislative in nature, *see Bi-Metallic*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 and the input of the appellants was not essential. *Cf. Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (hearing not necessary where facts not challenged).[2] We are satis-

---

**2.** This distinction is conceptualized by Professor Davis as follows:

Adjudicative facts usually answer the questions of who did what, where, when, how,

fied that the Commission is capable of rendering a fair decision on this issue without our requiring them to receive further input. Our disposition of this issue does not leave parties such as appellants vulnerable to abuse. If the Commission had discontinued appellants' job category in order to injure the appellants or other individuals, a different result might follow. *See Lewis v. Spencer,* 468 F.2d 553, 557 (5th Cir. 1972) (facially neutral rule applied in arbitrary fashion may reflect unconstitutional purpose). There are no such allegations here.

Accordingly, the judgment of the district court is AFFIRMED.

why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.

1 K. Davis, Administrative Law Treatise § 7.02 (1970).