James M. HEARN, Jr., Plaintiff-Appellee, Cross-Appellant,

v.

The CITY OF GAINESVILLE and Richard C. Corriveau, Defendants-Appellants, Cross-Appellee.

No. 81–5008.

United States Court of Appeals, Eleventh Circuit.

Oct. 12, 1982.

As Modified on Granting of Rehearing in Part Jan. 31, 1983.

Julius F. Parker, Jr., Tallahassee, Fla., J.T. Frankenberger, City Atty., Gainesville, Fla., for defendants-appellants, cross-appellees.

Robert L. Hinkle, Wadsworth, Davis & Hinkle, Tallahassee, Fla., for James M. Hearn, Jr.

Before GODBOLD, Chief Judge, HILL and FAY, Circuit Judges.

GODBOLD, Chief Judge:

The City of Gainesville, Florida and employee Richard Corriveau appeal from the district court's judgment entered against them in accordance with a jury verdict in favor of plaintiff-appellee James Hearn in an action brought under 42 U.S.C. § 1983. We reverse the judgment against the city and affirm the judgment against Corriveau.

### I.

James Hearn had worked for the city as an interviewer since 1966. By 1977 he had attained the position of personnel technician II ("PT"). At that time the city employed two PTs. The working relationship between Hearn and the personnel department head, appellant Corriveau, began to deteriorate. In April 1977 Hearn proposed to take several days of paid leave as compensation for working overtime on a project. Corriveau denied the proposal in a memorandum, stating,

> If you feel that this schedule and your work schedule in this department is beyond your physical capabilities and mental energies, I will accept your resignation from the City of Gainesville effective immediately.

On July 15, 1977 Hearn wrote a memorandum to city manager Farmer complaining that the personnel department had budgeted no money for him to attend a personnel conference. The memo was routed through Corriveau. The same day Corriveau sent a comment about the memo to Farmer complaining about Hearn. Part of his comment read:

> I believe I will recommend to you that within the next two or three weeks, or as soon as I can arrange to review the workload of other professionals in this department and to review the management reorganization study, that Mr. Hearn's position be deleted from next year's City budget.
>
> Mrs. Sain [the other PT] is capable of handling all of the General Government departments.... She is also capable of handling all of the CETA program....

On July 26, 1977 the city commission held one of a series of budget sessions. Because

of increased energy costs and resulting decrease in consumption the city planned to lay off a substantial number of utility department employees. Under the city's personnel policy, one laid off, as opposed to terminated, had precedence for recall in his job classification over new applicants for 180 days. An employee not recalled within 180 days was considered terminated.

One of the commissioners, Mr. Junior, proposed that because of the smaller number of employment positions with the city, one of the PT positions could be eliminated by having the affirmative action officer perform some of the interviewing. Farmer objected to using the affirmative action office in this manner but stated that, based upon the personnel department's workload, he would agree to the elimination of one PT position. Corriveau was present and did not take issue with Farmer's statement concerning the workload in his department. Farmer requested that the commissioners talk in terms of money rather than positions. The commissioner's proposal was restated so as to eliminate a position equal to the pay grade of a PT, and it was passed unanimously.

The city formed a quality control board composed of Corriveau, his assistant, a representative of the city manager's office, the affirmative action officers and a union representative, to determine, when necessary, who would be laid off. City personnel policy required layoffs to be made by reverse seniority if the employees were otherwise equal in work performance. As with layoffs in other departments, the board members individually examined the personnel folders of Hearn and Sain to determine which one should be laid off. The members rated the PTs on a scale from 0 to 5 without discussion among themselves. All four members rated Sain a 5, for a total of 20, and rated Hearn a 3, for a total of 12. Therefore, even though Hearn had more seniority than Sain, he was chosen to be laid off.

Corriveau told Hearn in September that he would be laid off on December 5, 1977. According to Hearn, Corriveau gave as a reason for the layoff that Hearn was physically and mentally unable to do his job. The official notice of termination, dated in November, explains the termination as "LAYOFF—WORK NO LONGER AVAILABLE."

Hearn filed a formal grievance with Farmer, challenging the objectivity of the quality control board. His grievance was denied. He then filed a § 1983 action in district court claiming a denial of due process because the layoff was merely a pretext for his firing without just cause.[1]

At trial there was no general verdict. The jury was directed to answer two interrogatories, as follows:

Do you find by the greater weight of the evidence that the plaintiff, James M. Hearn, Jr., was terminated from his employment as a result of the claimed animosity between him and the defendant, Richard C. Corriveau? [answered "yes."]

[If the jury answered "yes" to the above question]

Do you find by the greater weight of the evidence that the plaintiff, James M. Hearn, Jr., would have been terminated from his employment anyway even in the absence of Richard Corriveau's animosity toward him? [answered "no."]

The district court made no findings of its own. It entered judgment against the city and Corriveau for $52,500.61, representing back pay, and ordered Hearn's reinstatement. Appellants' motion for a judgment n.o.v. was denied.

## II.

Appellants make these arguments: (1) Hearn had no property interest entitled to due process protections. (2) There was insufficient evidence of causation to support the jury verdict. (3) The city cannot be

---

1. Hearn also contended that he was denied due process even if the layoff was bona fide because he was not permitted any input in the board's decision to lay him off instead of Sain.

liable because no policy, ordinance or custom operated to deprive Hearn of due process. (4) The district court erred by refusing to instruct the jury, in accordance with its pretrial finding, that if the layoff was bona fide Hearn received sufficient due process.

### (A) Hearn's property interest

 Plaintiff had no constitutional right of due process unless he had a property interest in continued employment. *Bishop v. Wood,* 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–2079, 48 L.Ed.2d 684 (1976). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1976), cited in *United Steelworkers of America v. University of Alabama,* 599 F.2d 56, 60 (5th Cir. 1979). We look to state law to determine if Hearn had a legitimate entitlement to his continued employment with the city. *Bishop v. Wood, supra* at 344, 96 S.Ct. at 2077. Where a statute or ordinance lists specific grounds for discharge of a public employee or states that a public employee can only be terminated for just cause, Florida courts hold that the employee has a property right of which he cannot be deprived without due process. *Laney v. Holbrook,* 150 Fla. 622, 8 So.2d 465, 467 (1942). *Accord, Ragucci v. City of Plantation,* 407 So.2d 932, 935 (Fla.App.1981); *cf. West v. Board of Commissioners, Monroe County,* 373 So.2d 83 (Fla.App.1979).

 Gainesville's Personnel Policy No. 19 [2] provides that a permanent employee may be dismissed "only for cause as outlined in the Code of Conduct of Disciplinary Procedures. . . ." The employee manual also states that a permanent employee may be dismissed only for cause. We conclude that Hearn had a property interest in continued employment under Florida law.

### (B) The constitutional violations

We cannot resolve the causation, municipal liability and jury instruction questions without first isolating the constitutional violation at issue. Hearn's contentions run this way: His layoff was merely a pretext to fire him without just cause. Corriveau deliberately understated the workload in the personnel department to cause the city to delete Hearn's position. Corriveau took this circuitous route because he knew he had insufficient grounds to fire Hearn for cause. At the budget meeting commissioner Junior suggested that one PT position could be abolished; city manager Farmer agreed based upon the workload of the personnel department, although he objected to the suggested use of the affirmative action officer. The commissioners in turn voted to abolish a PT position on the basis of the city manager's representations since they had no independent knowledge of the department's workload. With one of the PT positions abolished, it was a foregone conclusion that Hearn would be the employee laid off because Sain was the superior worker. By this Tinkers-to-Evers-to-Chance maneuver Corriveau caused Hearn to lose his job, in the name of a contrived layoff that was based on false information concerning the workload.

Hearn's theory was accepted by the jury in its answers to the two interrogatories— he lost his employment because of Corriveau's animosity; he would not have lost it but for Corriveau's animosity. Accepting these jury findings as correct, (see part C on the issue of correctness), the layoff was a phony arrangement, carried out for an improper motive, to deprive Hearn of his job. This states a substantive due process violation—deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and, because unrelated to the proper reasons for layoff, without any rational basis. *Nebbia v. New York,* 291 U.S. 501, 525,

---

**2.** Appellee represents that the personnel policies are enacted by the city commission and have the force of an ordinance. Appellants do not contest this representation.

54 S.Ct. 505, 510, 78 L.Ed. 940 (1933) ("the guaranty of due process ... demands ... that the law shall not be unreasonable, arbitrary or capricious"); *Roane v. Callisburg Independent School District,* 511 F.2d 633, 639 (5th Cir. 1975) (regardless of whether post-termination hearings satisfy procedural due process, superintendent could not be discharged where school board acted arbitrarily and lacked "good cause" for the dismissal); *cf. Nolan v. Ramsey,* 597 F.2d 577, 581 (5th Cir. 1979) (if Commission had discontinued employees' job category in order to injure them, such actions might constitute a due process violation). The superiority of Sain as an employee, determined in deciding who to lay off, is irrelevant. Hearn's complaint is that no layoff was appropriate because work of the department did not justify a layoff and a layoff was confected for his department to get rid of him.

### (C) Sufficiency of the evidence

◼ Next we look at whether the evidence supported the jury's answers to the interrogatories. The answers determined that the cause of Hearn's termination was Corriveau's animosity and that Hearn would not have been terminated absent Corriveau's animosity, that is, there would have been no layoff in Hearn's department and thus no vehicle for his termination. Appellants were not entitled to a directed verdict or judgment n.o.v. on these questions if there was substantial evidence favoring Hearn of "such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc). Considering all the evidence in the light most favorable to Hearn, we find that there was substantial evidence on causation. Farmer, the city manager, testified by deposition that his office relies upon the department heads to assess their workload prior to the annual budget sessions. If a department head deleted a position from his proposed budget, the city manager's office would not restore it to the budget submitted to the city commission. Prior to Corriveau's sending his memo to Farmer he had communicated several times with Farmer's office about the importance of retaining two PTs. The jury could then infer that Farmer took seriously Corriveau's stated intention to recommend that Hearn's position go and Sain's position be retained. When commissioner Junior brought the matter up—whatever may have triggered his suggestion—Farmer agreed with him that the workload would permit abolition of a PT position without utilizing the affirmative action office. Farmer testified that he could not remember the source of his information about the workload. The jury could infer that his information came from the Corriveau memo.

The jury could find, in turn, that Farmer's representation about the workload played a crucial part in the city commission's unanimous decision. Several commissioners testified that they relied upon Farmer's recommendation since they had no independent knowledge about the personnel department's workload. Even Commissioner Junior testified that he had not investigated the feasibility of his proposal.

The formation of the quality control board and its decision to choose Hearn as the person to be laid off did not break the chain of causation between Corriveau's acts and Hearn's termination. The jury could infer that Corriveau could anticipate that the choice between Hearn and Sain, by whatever vehicle made, would be made on a merit basis and that, on such basis, Hearn would be the person to go. Corriveau had made the yearly evaluations of Hearn and Sain. He had consistently rated Sain excellent. Generally he had rated Hearn average. Hearn was the predictable loser regardless of who made the choice.

There was adequate basis for the jury to find that Corriveau acted out of animosity, or to state it another way, that the layoff

was not bona fide. The jury could find that the workload required two PTs. Indeed, Corriveau admitted this fact. In May 1977 the budget director from the city manager's office reduced Corriveau's budget request by $48,090 and Corriveau responded that the reduction would force him to cut one PT. He stated that the loss of a PT would create a "tremendous hardship" because of the department's full workload. Memo from Corriveau to Steele, dated June 8, 1977. The notes of the budget director from a June 9, 1977 budget meeting show that the personnel department's requested budget was not reduced by the full $48,090 and that the "technician [was] back in." Thus, the jury could reasonably conclude that when Corriveau wrote the memo to Farmer complaining about Hearn on July 15, 1977, he knew the department needed two PTs.

■ Moreover when a government agency abolishes a position on grounds of efficiency, bad faith may be proved by a showing that the duties of the position were assigned to another person after the position was eliminated. *Hutchinson v. Department of Mental Health,* 108 Mich.App. 725, 310 N.W.2d 856, 859 (1981); *Kempf v. Town of Brookhaven,* 61 Misc.2d 283, 305 N.Y.S.2d 658, 660 (1969). The jury could find that after Hearn left in December 1977, his duties were first assigned to Sain and then to another PT. When the next budget came up in May 1978, Corriveau requested two personnel technicians. An undated budget worksheet prepared by the personnel department explained that two PTs were necessary because Sain spent 10 to 20 hours overtime per week to maintain the current workload and was still two to three weeks behind schedule. The worksheet also stated that the department had experienced an increased workload over the previous years. Corriveau hired a PT in October 1978.

Corriveau admitted that when he wrote the memo just cause to discharge Hearn did not exist. Corriveau attended the budget

meeting but remained silent when Farmer made statements about the diminished workload in his department that Corriveau knew to be incorrect. A telling piece of testimony consisted of Corriveau's statement that Hearn would never work for the personnel department again, a statement contrary to the city's recall policy.

### (D) Liability

■ Having held that Hearn's claim of a constitutional deprivation was supported by the evidence, we next address who is liable for the violation. A municipality can be sued under § 1983 only for its own actions, that is, it cannot be held liable for its employees' constitutional torts solely under the theory of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The city argues that it cannot be liable because no policy statement, ordinance, regulation or decision officially adopted or promulgated by the city commission caused Hearn to be deprived of constitutional rights. However, *Monell* recognized that a city acts through its employees in addition to its legislative body and held that a municipality may be sued under § 1983 for those edicts or acts of a city official that "may fairly be said to represent official policy." *Id.* The former Fifth Circuit has interpreted this standard of liability to mean that "in those areas where the official 'is the final authority or ultimate repository of [city] power, his official conduct and decisions must necessarily be considered those of one whose edicts and acts may fairly be said to represent official policy.'" *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir. 1980), quoting *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir. 1980). Hearn asserts that Corriveau, who is personnel director, and Farmer, who was city manager at the time, acted on behalf of the city by executing the official city form announcing Hearn's layoff.

■ Whether the city had delegated final authority concerning Hearn's layoff to

Corriveau and Farmer is a question of fact. *Schneider, supra* at 920. But the court did not submit this question to the jury. The special verdict addressed the question of causation and pretext. See judge's comment, Transcript, Vol IV at 96. Nor did the court make an explicit finding on the subject of the city's liability.[3] When the court submits interrogatories to the jury and does not include any issue of fact raised by the pleadings or evidence, each party waives his right to a trial by jury of the issue unless the party demands the issue be submitted to the jury before it retires. Fed.R. Civ. P. 49(a). The transcript of the jury instructions conference in the judge's chambers reveals that the city's counsel did not object to the interrogatories.[4] Since the court made no finding on the city's liability, the court is deemed to have found that Corriveau and Farmer had final authority over Hearn's layoff in accord with the court's judgment. *Id.*

We measure a district court's finding, express or deemed, under Rule 52(a) and will reject it "when although there is evidence to support it, [we are] left with the definite and firm conviction that a mistake has been committed." *U.S. v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Marable v. H. Walker & Associates,* 644 F.2d 390, 395 (5th Cir. 1981).

■ We focus first on the unconstitutional conduct. The underpinning of the constitutional violation was the false information provided by Corriveau. Interjecting this information into the city commission's decisionmaking process stripped of genuineness the city's decision to eliminate a PT position. Corriveau alone was responsible for this misinformation.[5] Consequently we examine whether Corriveau was acting with final authority when he recommended the deletion of Hearn's position. We have the firm conviction that he was not. Corriveau's actions set in motion a foreseeable chain of events that we reviewed in Part C, *supra.* However, the city commission exercised the final authority to delete one PT position[6] and the quality control board made the decision, even though it was a foregone conclusion, that Hearn would be laid off. Corriveau's actions, which were crucial to the constitutional violation, were nonetheless in the nature of determining the existence of certain facts and making a recommendation according to those facts. This conduct cannot be characterized as an exercise of delegated authority. *See* Schnapper, *Civil Rights Litigation After Monell,* 79 Colum. L. Rev. 213, 219 (1979). Had Hearn's layoff occurred by Corriveau's deleting the position from the budget, as Personnel Policy 23 permits, or by the city commission's reducing the personnel department's budget and directing Corriveau to make the necessary cuts, we would uphold the district court's finding. However, the unusual facts of this case do not present an example of final authority being delegated to and exercised by a city official. We

---

3. During argument on appellants' motion for a directed verdict, the district court asked appellants' counsel to address the question of the city's liability. The judge stated that he did not find sufficient evidence to establish liability since the city commissioners had acted in good faith. Hearn's counsel argued that Corriveau and Farmer had acted in their official capacities. The court then denied the motion for a directed verdict without further comment.

4. Although the city's counsel did request an instruction that was arguably addressed to the city's liability, counsel did not request any additional findings be made by interrogatories. *See* our discussion in Part E, *infra.*

5. Hearn's counsel stated at the jury instruction conference that he did not think Farmer deliberately provided false information to the city commission. He did not argue to the jury that Farmer was culpable.

6. The city commission's resolution, although it was expressed in terms of a budget reduction in the amount of one PT's salary, was understood by everyone as eliminating one PT position. See footnote 5, *supra.*

reverse the district court's judgment against the city.[7]

### (E) Jury instructions

■ In its pretrial order the district court granted summary judgment to appellants on the issue of whether Hearn was denied due process if the layoff was genuine. It held:

> If the discontinuation of Plaintiff's employment was a bona fide layoff for budgetary reasons, Plaintiff received any due process to which he was entitled.

Appellants submitted the following proposed jury instruction:

> If you find that the City Commission of the City of Gainesville determined to lay off a number of employees rather than increase taxes, and that Plaintiff was laid off pursuant to that decision, then you shall find in favor of the Defendants and against the Plaintiff. Whether the reasons for the City Commission's decision are sound are not within the province of the Jury to determine, so long as they are arguably legitimate and not a mere pretext for violating basic constitutional rights.

After a lengthy discussion among counsel and the judge, the judge modified the instruction to read:

> If you find that the City Commission of the City of Gainesville determined to lay off a number of employees rather than increase taxes, then the wisdom of the City Commission's decision is not within the province of the Jury to determine, unless the decision to eliminate the plaintiff's job resulted from the claimed animosity between the Plaintiff, James M.

Hearn, and the Defendant, Richard Corriveau.

The judge changed the instruction because Hearn's counsel argued that the layoff would not be bona fide if the city commission relied upon erroneous information supplied by Corriveau. Appellants' counsel requested the court to give the instruction as originally submitted or not give it at all. The court did not give the instruction.

Appellants' argument that the district court erred by refusing to give the instruction as submitted actually encompasses two issues: failure to properly instruct and sufficiency of evidence. We addressed in Part C whether there was sufficient evidence on the genuineness of the layoff and found no error. The judge's modification of the instruction was appropriate given the narrow issue of facts contained in the appropriate interrogatories. The court limited the jury to finding causation, i.e., whether the layoff was bona fide. Except during argument on appellants' motion for a directed verdict, no one asserted that the city could be found not liable while Corriveau could be held liable. Appellants' instruction blended together the questions of causation and liability. The judge's modification, which focused on the genuineness of the layoff and avoided the issue of the city's separate liability, was necessary because the jury had not been asked to find the city's liability separately.[8]

### III.

■ Summarizing, we hold: the judgment is to be affirmed with respect to liability of Corriveau; the judgment against the city for damages must be reversed. This leaves the remedy uncertain. Can the

---

7. We do not address whether Hearn is entitled to relief against the city directly under the Constitution, a claim which the pre-trial order recognized was asserted by Hearn. This issue was not addressed by the district court and is now for it to consider on remand.

8. The record contains three jury verdict forms submitted by appellants. The first asks whether the jury found that Hearn was laid off pursuant to a decision by the city commission that a budgetary exigency existed. The second is a general verdict in favor of both appellants. The third is a general verdict in favor of the city alone. An additional special verdict following the third one appears, from the wording, to have been submitted by Hearn. See Record at 345–48. We cannot find an instance in the record where appellants' counsel objected to the form of verdict used by the court. *See Van Ooteghem v. Gray,* 628 F.2d 488, 495 n. 7 (5th Cir. 1980).

city be required to reinstate Hearn, bearing in mind that he was removed from its employ through a maneuver by Corriveau for which the city was not responsible? Because of this unanswered issue, the judgment against the city requiring Hearn's reinstatement must be vacated. If the city cannot be required to reinstate Hearn, will it voluntarily reinstate him? If Hearn is not reinstated, is the money judgment against Corriveau the total amount of damages to which Hearn is entitled, or is he entitled to additional damages for future earnings lost because he is not reinstated? Has any claim for additional damages been waived or otherwise lost? These issues have not been briefed, and they should be addressed by the district court in the first instance.

An additional issue that must be addressed on remand is whether the city is liable to Hearn on his claim asserted directly under the Constitution itself, and if so the nature and extent of that liability.

The judgment of the district court is AFFIRMED in part, REVERSED in part, VACATED in part and REMANDED for further proceedings not inconsistent with this opinion.