**L.M.E., INC., Plaintiff,**

v.

**CITY OF HOLLYWOOD and Sam Martin, Defendants.**

**No. 85–6176–Civ–Paine.**

United States District Court, S.D. Florida.

March 25, 1985.

As Amended April 19, 1985.

Bruce Randall, Fort Lauderdale, Fla., for plaintiff, L.M.E., Inc.

Andrew DeGraffenreidt, City Atty., City of Hollywood, Hollywood, Fla., for defendants.

PAINE, District Judge.

This cause came before the Court on Thursday, March 21, 1985 for a hearing on plaintiff's motion for a preliminary injunction. (DE 2). Defendants responded in opposition to the issuance of injunctive relief. (DE 9). Plaintiff presented five witnesses and offered a composite exhibit during the course of the hearing. Based on this evidence the Court makes the following findings of fact.

1. Plaintiff operates a twin movie theater located at 2315 North 60th Avenue, Hollywood, Florida.

2. Plaintiff's theater exhibits adult entertainment motion pictures.

3. On November 7, 1984 Officer Berwick observed an advertisement on the theater marquee for the file "Pleasure Zones". Berwick knew that film to have previously been declared obscene by a judicial officer.

4. Officer Berwick viewed the film, confirmed that it was the same film.

5. Officer Berwick obtained a search warrant authorizing seizure of the film "Pleasure Zones" and the projectors.

6. Officer Berwick executed the search warrant on November 11, 1984. At that time the motion picture "Pleasure Zone" was seized. In addition, Berwick noted the presence of other films which had previously been declared obscene by a judicial officer. These films were also seized. The projectors were not seized because of the fact that Berwick was not mechanically or technically prepared at the time to dismantle the projection system without possible injury to person or property.

7. Berwick also arrested the manager of the theater.

8. Officer Broadlieb went to the theater on February 7, 1985 and viewed two untitled films. While viewing the films, Broadlieb dictated the scenes as he viewed them into a portable tape recorder.

9. Officer Broadlieb returned to the theater the following day, February 8, 1985 with a search warrant authorizing seizure of the two untitled films (to be identified on

the basis of the typed affidavit of the recorded dictation) and the projectors.

10. Officer Broadlieb viewed one of the untitled films for one or two minutes and confirmed that the film he was viewing on February 8, 1985 was one of the films he had seen the day before.

11. Officer Broadlieb then went to the projection room, served the search warrant and executed the warrant. He seized one reel of film from the film platter on the projection machine which contained two films. One film was the motion picture he had confirmed to have been the film viewed the previous day and declared obscene by a judicial officer on the basis of Broadlieb's affidavit and without hearing. In addition to the one reel containing the two untitled films, Broadlieb seized 3 "trailers" of films which had previously been declared obscene.

12. The projectors were not seized because of lack of equipment and expertise.

13. On February 12, 1985 Officers Graziadei and Minger went to the theater. Each officer viewed two untitled films. The same procedure of simultaneous dictation used by Officer Broadlieb was used by these officers.

14. These dictations were transcribed and constitute the exhibits 1, 2, 3, 4 attached to plaintiff's composite exhibit one introduced at the hearing. These exhibits were reviewed by Judge Patti Englander Henning and the untitled films detailed in those exhibits were declared obscene. A search warrant was issued authorizing the seizure of the films and the projectors.

15. Graziadei and Minger, accompanied by two electricians and three other officers at least one of whom was in uniform, went to the theater the next day on February 13, 1985 to execute the warrants.

16. The warrants were served and executed and the four untitled films detailed in exhibits 1 through 4 were seized. In addition the electricians effectuated the dismantling of the theater's two 35mm projectors and those items were seized as well.

17. The employees of the theater were arrested and transported to the police facilities for processing.

18. The projection systems seized from the theater on February 13, 1985, after removal of the four films from the film platters, were in average to good condition prior to the seizure. The systems have an aggregate value of approximately $45,000.00.

19. On February 28, 1985 plaintiff filed a motion for preliminary injunction and a complaint for permanent injunction and damages for the alleged violation of plaintiff's First, Fourth and Fourteenth Amendment rights.

### Plaintiff's Prayers on Motion for Preliminary Injunction

Plaintiff advanced five areas which it desires to be covered by a preliminary injunction:

1. Mandatory direction to return the seized projectors;

2. enjoin seizures of multiple copies of the same film until judicial determination of obscenity;

3. enjoin seizure of items not specifically named in the search warrant;

4. enjoin future seizures of projectors; and

5. enjoin defendants from arresting employees in theater when arrests result in a closing of the theater.

### Return of the Seized Projectors

As plaintiff's counsel conceded during the course of the hearing, the question of the return of the seized projection machines may present a *Younger v. Harris* problem. The anti-injunction act provides that a federal court "may not grant an injunction to stay proceedings except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C. § 2283. By its terms, therefore, the act provides exceptional circumstances in which a federal court may legitimately interfere with a state court proceeding.

The United States Supreme Court in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) decided the narrow issue that 42 U.S.C. § 1983 (the statute plaintiff employs in this action) falls within the "Act of Congress" exception to the anti-injunction act. The *Mitchum* Court, however, did not expound on what circumstances must be present to warrant the issuance of a federal injunction. *Id.* at 243, 92 S.Ct. at 2162. In noting the existence of the remaining question, however, the *Mitchum* Court referred to the dictates of *Younger v. Harris.*

*Younger v. Harris* was the Court's seminal exposition on what was termed the doctrine of "Our Federalism". In *Younger* the Court reasoned that a

> court of equity should not act, and *particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.*

401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). (emphasis added). This doctrine is premised on the notion that a proper respect for state function is fostered by a system "in which there is sensitivity to the legitimate interests of both State and National governments, and in which the national government, anxious though it may be to vindicate and protect federal rights and federal interests ... 're-strains itself so as not to unduly interfere with the States' legitimate activities.' " *Id.,* 91 S.Ct. at 750.

■ It is clear that plaintiff does have a course of action in state court through which the seized projectors may be returned. *Fla.Stat.* § 933.14. Indeed the Court in *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975) stated that federal injunctive relief should not issue absent a clear showing that plaintiff could not get his property back through some state proceeding.

In arguing against application of the *Younger* doctrine to the demand for return of the projectors, plaintiff cites *Universal Amusement Co., Inc. v. Vance,* 559 F.2d 1286 (5th Cir.1977), for the proposition that a bad faith seizure of projectors used to display obscene films creates an exception to the *Younger* doctrine. Initially it is important to note that the *Younger* issue was not raised in the facts of the case because there were no state proceedings, civil or criminal, pending. *Id.* at 1289. The *Vance* Court did determine that the multiple seizures and the failure to prosecute on the obscenity charges showed the city's bad faith in executing the seizures. *Id.* at 1295.

The facts of this case, however, differ significantly from those in *Vance.* In the instant case there are pending criminal cases. Additionally, the Court notes that defendants passed the opportunity to seize the projectors on at least four occasions prior to the February 13, 1985 seizure. When questioned by plaintiff's counsel as to the reason the officers had not effected seizure of the projectors prior to February 13, 1985 Officer Graziadie responded that the plaintiff was "given the benefit of the doubt."

The facts in the instant case simply do not rise to the level of bad faith which would permit this Court to intrude on the state proceedings. This ruling should not however be misconstrued as disagreement with the reasoning of Judge Gonzalez that projectors in and of themselves are not instrumentalities of crime. Indeed, as noted by the *Vance* Court the projector itself should not be necessary to establish a defendant's intent to exhibit an obscene film. *Id.* at 1295. It is, rather, possession of the film itself which would be the best manner in which to establish the necessary intent and yet leave the theater operator the means with which he might exhibit non-obscene films. The Court's ruling herein merely notes that there is insufficient evidence upon which a finding of bad faith harassment can be based. That insufficiency coupled with the remedies provided by Florida Statutes and available to plaintiff through the pending state proceedings mandate application of the doctrines espoused in *Younger* and *Hicks* as to plain-

tiff's request for return of the seized projectors.

■ With regard to plaintiff's four remaining prayers, the Court has considered them in light of the *Younger* principles and finds that the relief sought therein is prospective and therefore may be entertained. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The Court now turns to the merits of plaintiff's four remaining requests for injunctive relief.

### Request for an Injunction Prohibiting Seizure of Multiple Copies of a film

■ The facts adduced during the course of the hearing simply do not support the granting of an injunction of these grounds. There was a total lack of any testimony or evidence which would support the granting of an injunction of these grounds. There was a total lack of any testimony or evidence which would support an inference that the defendants seized multiple copies of the same film. Without such a showing the Court cannot issue an injunction.

### Request for an Injunction Prohibiting Seizure of Films not Named in a Search Warrant

The evidence clearly shows that the officers sometimes seized films or trailers of films which were not set forth in the warrant being executed. The record is also clear, however, that each of the films seized was done so on a prior adjudication of obscenity. Florida Statute § 847.-011(1)(a) makes the knowing exhibition of an obscene motion picture film a first degree misdemeanor. Section 847.011(2) provides that possession of an obscene film without intent to exhibit is a second degree misdemeanor. As such, films which have already been declared to be obscene by a judicial officer are evidence of crimes and therefore contraband in the same way controlled substances are contraband.

Initially it is important to note that plaintiff advances no challenge to the manner in which this category of films were declared obscene. The United States Supreme Court noted that "contraband may be seized without a warrant under the 'plain view' doctrine." *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 327, n. 5, 99 S.Ct. 2319, 2324 n. 5, 60 L.Ed.2d 920 (1979). The Court did not decide whether the "plain view" exception applied to cases where the films seized have already been declared obscene. *Id.* at 327, 99 S.Ct. at 2324. The Court merely noted that *allegedly* obscene films could not be seized without a warrant. *Id.* at 327, n. 5, 99 S.Ct. at 2324, n. 5.

■ This Court is of the view that, once properly declared obscene, a film stands in no better position than any other item of contraband. To hold differently would be to afford the obscene film a better status than any other illegal substance. This is so because once a film is properly declared obscene it no longer enjoys the protection of the First Amendment. *See Roth v. United States,* 354 U.S. 476, 485–86, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957); *Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). So long as the requirements for an exception to the need for a search warrant are present, there is no perceivable reason to require that a search warrant be issued for the seizure of a film that has already been declared obscene. Plaintiff has failed to show the absence of any of the exceptions and it appears from the testimony that the items seized were in "plain view".

### Request for an Injunction Prohibiting the Future Seizure of Projectors

In accordance with the Court's reasoning regarding the projectors which have already been seized (supra at pages 187–189), the Court will enjoin defendants from the future seizure of projectors. *Universal Amusement Co. v. Vance,* 559 F.2d 1286 (5th Cir.1977); *Route 1 Books, Inc., et al. v. Ron Cochran,* Case No. 83–6489–Civ-Gonzalez (order of 8/3/83 S.D. Fla.)

### Request for an Injunction Prohibiting the Arrest of Employees

■ This Court cannot dictate to state and local governments the manner in which

individuals may be arrested so long as basic, fundamental constitutional principles are adhered to. In this instance plaintiff complains that the employees could have been given a notice to appear rather than being placed under physical arrest. While it may be true that the officers had that option available to them this Court cannot force them to exercise their discretion. So long as there is probable cause to believe a crime has been, is, or is about to be committed and that the individual is the perpetrator the officer may place the individual under arrest.

■ Finally the Court notes defendants' contention that plaintiff has failed to state a claim for damages relief under 42 U.S.C. § 1983. Plaintiff addressed this contention during the course of the hearing citing *Monell v. New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) for the position that a city may indeed be liable for compensatory damages in a § 1983 suit. Defendants' argument is not, however, that cities or police chiefs can never be held liable under § 1983, but rather that they cannot be held liable under a respondeat superior theory. Defendants' contention is correct. *Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir.1982); *Harris v. Pirch*, 677 F.2d 681 (8th Cir.1982). A review of plaintiff's complaint shows that it is devoid of any allegations upon which a § 1983 damages recovery could be obtained against these defendants.

■ The only remaining claim is plaintiff's pendent state claim for tortious interference with business relationships. In light of the fact that no federal claims remain the Court will decline to exercise its pendent jurisdiction over the tortious interference claim. It is therefore

ORDERED and ADJUDGED that the motion for preliminary injunction is denied with the exception that defendants are hereafter enjoined in the future from seizing from plaintiff's premises any projectors. It is further

ORDERED and ADJUDGED that plaintiff's demand for damages pursuant to

§ 1983 fails to state a claim upon which relief can be granted and is therefore dismissed without prejudice. It is further

ORDERED and ADJUDGED that the Court declines to exercise its pendent jurisdiction over the remaining state law claim. The Clerk of the Court is directed to close this file.