**George FEWQUAY, Plaintiff,**

v.

**William PAGE, etc., et al., Defendants.**

**No. 86–2339–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 16, 1987.

Jepeway and Jepeway, P.A., Louis M. Jepeway, Jr., Miami, Fla., for plaintiff.

Debra S. Kornbluh, Florida Dept. of Health and Rehabilitative Services, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLU-SIONS OF LAW AND FINAL JUDGMENT

HOEVELER, District Judge.

Plaintiff filed this action on November 17, 1986, seeking injunctive and declaratory relief. On February 11, 1987, a hearing was had on all pending motions as well as on the claims for temporary and permanent injunction. The parties came before the Court for closing arguments on June 1, 1987 at which time they agreed to submit findings of fact and conclusions of law. Upon due consideration of the entire record, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Plaintiff is a resident of Dade County, Florida and was a Group Treatment Leader II of the Dade Intensive Control Program of the Florida State Department of Health and Rehabilitative Service (HRS). He was employed by HRS for seven years.

2. The Plaintiff enjoyed "permanent status" in the State of Florida Career Service System. Florida Statute 110.227(1) provides that a permanent status employee can be suspended or fired only for cause. He was entitled to the protection of the Florida Administrative Procedure Act, Chapter 120, Florida Statutes.

3. The Defendant, William Page, is the Secretary of HRS. As such, he is responsible for the operation and administration of HRS. He is required to comply with the Florida State Career Service System rules, regulations, and statutes, and the Florida Administrative Procedure Act and its rules and regulations while executing his duties.

4. The Defendant, Linda Berkowitz, was the District Administrator of District Eleven of HRS, which consists of Dade and Monroe counties, when HRS terminated plaintiff's employment. As such, she was responsible for the operation and administration of District Eleven. She was required to comply with the Florida State Career Service System rules, regulations and statutes, and the Florida Administrative Procedure Act and its rules and regulations while executing her duties. She is a resident of Dade County, Florida. At all times pertinent to this cause, all Defendants acted under color of State law, statutes, ordinances, regulations, customs and usages.

5. The Plaintiff was twice convicted of robbery in 1975, when he was 19 years old. He served a term of imprisonment and was paroled. He successfully completed his parole. He applied for employment with

HRS in September, 1979. He made full disclosure of his convictions when he applied. Plaintiff was employed by HRS in September, 1979.

6. The Plaintiff was a Detention Careworker from September, 1979, to September, 1982. He was a Group Treatment Leader from September, 1982 to June, 1983. He was a Detention Careworker II from June, 1983 to May, 1985. He was a Group Treatment Leader II from May, 1985, to October 30, 1986. In all these positions, the Plaintiff worked at a child care facility and in child care programs.

7. In his last position, the Plaintiff counseled and supervised residents of a halfway house, the Dade Intensive Control Program. All residents were delinquent children between the ages of 13 and 18. He worked an eight hour shift. The Plaintiff's employment record with HRS has always been at least satisfactory. He received an excellent evaluation as a Group Treatment Leader II. A copy of that evaluation is appended to this Order.

8. The Plaintiff is also a full-time student at Florida International University and expected to receive his degree in Criminal Justice in the Summer of 1987.

9. The 1985 Session of the Florida Legislature enacted Session Law 85–54, which amended Florida Statute 110.1127(3)(a)(1) to provide that within HRS all positions in programs providing care to children for 15 hours or more per week are deemed to be positions of special trust or responsibility and a person *shall be* disqualified for employment in any such position by reason of having been found guilty of any one of several enumerated felonies, including bank robbery. The Statute provides for no exceptions. It provides for no hearing whatsoever in which a person who has been convicted of one of the crimes may establish his or her rehabilitation. It provides no exceptions for those people already employed by HRS who have good records. It is a blanket exclusion of a group of people forever from positions of special trust or responsibility within HRS. No other Florida Statute grants any relief whatsoever

from the absolute prohibition contained in Florida Statute 110.1127(3)(a)(1).

10. The Defendants and HRS terminated the Plaintiff on October 30, 1986, as required by Florida Statute 110.-1127(3)(a)(1). The Plaintiff received no hearing prior to or after his termination. The only process he was given was a "hearing" which was limited to determining whether or not the Plaintiff had, in fact, been convicted of the two robberies. He had been, of course, as he revealed to HRS when he applied for employment in September, 1979.

11. The Plaintiff's employment with HRS was his sole source of income.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this cause and of the parties under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) to entertain the Plaintiff's claim seeking declaratory relief, mandatory relief, temporary and permanent injunctive relief and attorneys' fees brought under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1651, 2201 and 2202.

2. The Plaintiff had a property interest in his employment with HRS. *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491–1492, 84 L.Ed.2d 494 (1985); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir. 1982). *Hearn* held that:

"... We look to State law to determine if Hearn had a legitimate entitlement to his continued employment with the City ... Where a Statute or Ordinance lists specific grounds for discharge of a public employee or states that a public employee can only be terminated for just cause, Florida Courts hold that the employee has a property right to which he cannot be deprived without due process ...

Gainesville's Personnel Policy No. 19 provides that a permanent employee may be dismissed 'only for cause as outlined in the Code of Conduct of Disciplinary Procedures ...' The Employee Manual also states that a permanent employee may be dismissed only for cause. We conclude that Hearn had a property in-

terest in continued employment under Florida Law."

3. Since the Plaintiff clearly had a property interest in his employment with HRS, it was constitutionally impermissible without affording him a proper measure of due process, in this instance by some type of hearing. *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576, 578, 92 S.Ct. 2701, 2708, 2709, 33 L.Ed.2d 548 (1972); *Reagan v. United States*, 182 U.S. 419, 425, 21 S.Ct. 842, 845, 45 L.Ed. 1162 (1901); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–1562, 56 L.Ed.2d 30 (1978); *Goss v. Lopez*, 419 U.S. 565, 573–574, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1974); *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332–1333 (11th Cir.1982).

4. Florida Statute 110.1127(3)(a)(1) is unconstitutional and violates the due process laws because it mandates the firing of a certain group of employees, including those who possess property interests in their employment, as does the Plaintiff, without even the most rudimentary type of due process. Thus, the termination of the Plaintiff, as required by the statute, was unconstitutional and, therefore, null and void.

5. Statutes which create permanent irrebuttable presumptions have long been disfavored under the Due Process Clause. *Vlandis v. Klein*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973); *Cleveland Board of Educ. v. LaFleur*, 414 U.S. 632, 644, 94 S.Ct. 791, 798, 39 L.Ed.2d 52 (1974); *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972); *Carrington v. Rash*, 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965); *United States Dept. of Agriculture v. Murry*, 413 U.S. 508, 514, 93 S.Ct. 2832, 2835, 37 L.Ed.2d 767 (1973).

6. Florida Statute 110.1127(3)(a)(1) contains a permanently irrebuttable presumption that all persons who have ever been convicted of one or more certain enumerated felonies, no matter how long ago, no matter how rehabilitated the individual, can never, under any circumstances, be placed in a position of special trust or responsibility within HRS. In the context in which this blanket condemnation is operable, the statute is rendered defective. It may be, as the State insists, that most convicted felons are not fit to occupy positions of special trust or responsibility within HRS. But all convicted felons are not in this category. This statute wholly rejects fundamental concepts germane to our system such as penitence, rehabilitation and motive to do well. Indeed, the statute discourages such concepts. Clearly, this somewhat Draconian legislation was an anxious legislative response to the rash of child care abuse problems which came to light a number of months ago. As is often the case where well-intentioned legislation is not carefully considered, the constitutional rights of some may be abridged. Such is the case here. Plaintiff, apparently a very good employee, had under the original statute in question, no opportunity to retain his position, a clear property right, by hearing, petition or other procedure which would have permitted his employer to retain him. Some are wholly suited, even uniquely qualified, for these positions. Given the opportunity to make his case, the Plaintiff would likely have been able to prove that he was worthy of occupying such a position. Had he had the opportunity to do so, the State's policy would have been furthered by leaving the Plaintiff in his position. *Stanley v. Illinois*, 405 U.S. at 654–655, 92 S.Ct. at 1214–1215. Indeed, in the Plaintiff's most recent Employee Performance Appraisal, the reviewer concludes that the Plaintiff exceeded performance standards and that:

"Mr. Fewquay has exceeded his performance standards by being an extremely conscientious and professional Group Treatment Leader. He has shown responsibility by setting policies regarding the night shift. His ability to identify problems is acute and solutions to these problems are suggested. Mr. Fewquay is extremely dependable and motivated to helping DIC become a quality program."

From *Ingraham v. Wright*, 525 F.2d 909, 917–18 (5th Cir.1976), *aff'd*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), I note the following instructive language (the case is not pertinent on the facts):

"[11.12] The concept of due process is premised upon fairness and reasonableness in light of the totality of circumstances. [W]hether any protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' "

.     .     .     .     .

"In holding that procedural safeguards accompanying the use of corporal punishment in public schools are not constitutionally mandated, we are cognizant of the Supreme Court's holding in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), that an Ohio statute authorizing suspension of public school students without notice of the offense for which suspended and without opportunity for a hearing violates students' rights to procedural due process. The basis for the Court's holding that due process should have been afforded plaintiffs was its determination that education was a substantial property interest that the State of Ohio had conferred on plaintiffs and 'having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures.' "

Since this case was heard by the Court, the Legislature, apparently recognizing the infirmities in the statute has amended it. (1987 Legis. HB 1409–amending S.110.1127 F.S.) Now a procedure has been provided so that an employee may seek an exemption. Plaintiff complains in a recent pleading, that placing the burden on him to establish his fitness still renders the statute defective. I disagree. Plaintiff can now avoid the harsh result of the original statute (if in fact his dismissal must now be pressed by Defendant) by presenting his case. He now can have "process" of an apparently reasonable type to preserve his job. In view of his performance it is unlikely that "cause" could be shown to bar the exemption sought.

7. These facts also present the interesting question as to whether or not Florida Statute 110.1127(3)(a)(1) violates Article I, § 10 of the Constitution of the United States. The Plaintiff entered into an employment contract with the Defendants. He was employed by the Florida State Department of Health and Rehabilitative Services for over seven years. He enjoyed "permanent status" in the State of Florida Career Service System. Florida Statute 110.227(1) provides that a permanent status employee can be suspended or fired only for cause. The Statute became part of the Plaintiff's employment contract with the State of Florida. The question becomes whether it was obliged to abide by it. Florida Statute 110.1127(3)(a)(1) required that the Plaintiff be fired presumably in violation of this contract, as no "cause" had to be shown. That may well have unconstitutionally impaired the State's contractual obligations. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938). However, it becomes unnecessary to decide that question in view of the amendment to the statute. The ultimate question of the plaintiff's rights may yet, however, depend on how the state construes and puts into practice its handling of the exemption procedures. I note parenthetically further actions in this regard should, initially, at least, be addressed to the state courts. In view of the above, it is

ORDERED AND ADJUDGED that:

1. Florida Statute 110.1127(3)(a)(1), in its original form, is unconstitutional on its face and as applied to the Plaintiff.

2. The Defendants are permanently enjoined from enforcing Florida Statute 110.1127(3)(a)(1) in its original form.

3. The Defendants shall reinstate the Plaintiff to the position he held when he was fired in October, 1986, that of Group Treatment Leader II.

4. The Defendants shall make the Plaintiff whole. They shall pay the Plaintiff all back pay which he lost, they shall restore all his perquisites of employment, they

**1200**

shall restore him to the State Pension System as though he had never left the State's employment and shall do whatever else is necessary to restore the Plaintiff's status quo.

5. The Statute in its amended form is not unconstitutional as it provides a process by which, if forced to do so, plaintiff can take measures to protect his job. In the meantime, the Plaintiff shall be restored to his position of which he was deprived due to enforcement of the constitutionally defective original statute.

6. The question of Plaintiff's right to attorneys fees will be taken up by appropriate motion and memoranda to be presented within twenty (20) days from the date of this order.

7. The Defendants shall pay the Plaintiff's costs.