Kent A. GUNTHARP, Plaintiff,

v.

COBB COUNTY, GEORGIA: Robert E. Hightower, Individually and Officially in his capacity as Director of the Department of Public Safety, Defendants.

Civ. A. No. 1:88–CV–2538–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 3, 1989.

Mary Ann B. Oakley, Oakley & Bonner, Atlanta, Ga., Jack Freddie Witcher, Bremen, Ga., for plaintiff.

David Phillip Hartin, Sams, Glover & Gentry, Marietta, Ga., for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on defendants' motion for summary judgment. Fed.R.Civ.P. 56(c).

## I. STATEMENT OF FACTS.

The parties to this action are plaintiff Kent A. Guntharp, a former police officer employed by defendant Cobb County; defendant Robert E. Hightower, Director of the Cobb County Department of Public Safety; and defendant Cobb County, a political subdivision of the State of Georgia. The court's jurisdiction of the subject matter of this action is predicated upon 28 U.S.C. §§ 1331 and 1343. The following facts give rise to this action.[1]

On the evening of February 15, 1982, plaintiff participated in the arrest of Floyd Calvin Davis and Melvin Barry Fulghum. Davis and Fulghum were apparently intoxicated and offered resistance requiring plaintiff and a fellow officer to use force to effect their arrest. Davis and Fulghum were eventually subdued, handcuffed and transported to the Cobb County Jail in separate patrol cars. When plaintiff and his fellow officer arrived at the jail with their arrestees, plaintiff placed Davis in a "restraint hold around the neck" and thereby forced him into the doorway of the building. Plaintiff released Davis—whose hands were still cuffed behind his back—when his fellow officer complained about the restraint hold. On June 8, 1982, Davis and Fulghum filed a formal complaint against plaintiff with the Cobb County Internal Affairs Unit alleging excessive use of force. The Internal Affairs Unit initiated an investigation of the incident soon thereafter. Witnesses were interviewed on or about June 17, 1982 and a report prepared on August 10, 1982.

Prior to completion of the investigation, a second complaint was filed against plaintiff by a neighbor in connection with the shooting of the neighbor's dog. Plaintiff was informed of the complaint July 28, 1982 and instructed to appear at a certain location to submit to a polygraph examination. During the initial stages of the testing procedure, plaintiff was told he would be questioned about the shooting of his neighbor's dog as well as about shots fired into a house and the shooting of some horses. At that point, plaintiff declined to complete the polygraph examination and left to contact his attorney. Two hours later, after consulting with his attorney, plaintiff informed his superiors that he would complete the examination. He was then informed that he had committed an act of insubordination by refusing to submit to the examination in the first instance.[2] Plaintiff was given written notice

---

1. This statement of facts is based upon the court's review of the pleadings of record together with the parties' briefs and evidentiary materials submitted therewith, as well as the Georgia Court of Appeals decision in a related case,

*Guntharp v. Cobb County*, 168 Ga.App. 33, 307 S.E.2d 925 (1983).

2. Cobb County Police Department General Order 74–6, Internal Affairs Unit, Rule C provides that the refusal to submit to a polygraph exami-

of the termination of his employment July 29, 1982.

Twelve days after plaintiff's dismissal, on August 10, 1982, the Internal Affairs Unit prepared a report recommending that the complaint of excessive force against plaintiff filed by Fulghum and Davis be sustained. The report, which was forwarded to defendant Hightower August 12, 1982, recommended punishment "up to and including termination [of employment]." Defendant Hightower added the following notation to the bottom of the Internal Affairs report: "I concur with [the] recommendation, it is now, however, a moot point inasmuch as [plaintiff] has previously been terminated for other reasons." No further action was therefore taken on the Davis/Fulghum incident.

On August 17, 1982, the Cobb County Civil Service Board heard plaintiff's appeal of his discharge for insubordination and affirmed the action. Plaintiff then filed a petition for writ of certiorari to the Superior Court of Cobb County, which subsequently denied the petition. Finally, plaintiff appealed the denial of his petition for writ of certiorari to the Georgia Court of Appeals. In a decision rendered September 16, 1983, the court of appeals determined that plaintiff's polygraph examination was procedurally flawed and therefore reversed the superior court's denial of his petition. The case was then effectively remanded back to the superior court.

After over two years of inactivity, plaintiff requested a hearing before the superior court in connection with this remanded petition. Oral arguments were heard two months later. After the passage of another two years, the superior court remanded the case back to the Civil Service Board.[3] Three months later, on February 17, 1988, the Civil Service Board disaffirmed plaintiff's July 29, 1982 discharge but declined to award back pay.[4] Plaintiff was then reinstated to his former position with defendant Cobb County. Immediately upon his reinstatement, however, plaintiff was served with a second notice of suspension and proposed termination. This notice provided,

> Pursuant to a departmental internal affairs investigation completed on August 11, 1982, concerning allegations of mistreatment of persons in custody and use of unnecessary force, I [defendant Hightower] propose to terminate your employment with the Cobb County Police Department.
>
> I am proposing your dismissal based upon the charges set forth below:
>
> On [February 15, 1982], when carrying out the arrest of Floyd Calvin Davis and Melvin Barry Fulghum, you used more force than was necessary or reasonable by applying a "chokehold" on Floyd Calvin Davis while his hands were handcuffed behind his back. You further abused Mr. Davis by then dragging him into the book-in area of the Cobb County Jail. This violated [specified rules] of the Cobb County Police Department Code of Conduct, relating to treatment of persons in custody and use of force.
>
> This constitutes cause for your suspension and dismissal as defined by ... the rules and regulations of the Cobb County Civil Service Board, ....

Plaintiff was then afforded an opportunity to respond to this second charge May 20, 1988, at which time he submitted a written protest to defendant Hightower. After consideration of plaintiff's protest, defendant Hightower terminated plaintiff's employment May 23, 1988 retroactive to August 17, 1982, the date on which the Civil Service Board affirmed plaintiff's earlier discharge.

On June 2, 1988, plaintiff filed a timely appeal of this second discharge to the Civil Service Board. On September 9, 1988,

---

nation shall be considered a dischargeable act of insubordination.

**3.** It is unclear why so much time passed before the case found its way back to the Civil Service Board. In any event, plaintiff does not contend that this delay is chargeable to defendants.

**4.** The record contains no reason why the Civil Service Board withheld the back pay award. In any event, plaintiff apparently chose not to appeal this decision and, as the matter relates to plaintiff's first discharge, it is not before this court.

however, plaintiff initiated the instant action and subsequently dismissed his administrative appeal November 29, 1988. By this action, plaintiff alleges that defendant Hightower's decision to terminate his employment a second time violated his rights to substantive due process, and that defendant Cobb County's deprivation procedures are constitutionally inadequate and therefore deprived him of his rights to procedural due process. Defendants now assert their entitlement to summary judgment on both claims.

## II. CONCLUSIONS OF LAW.

Courts should grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the movant bears the initial burden of asserting the basis for his motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This does not require that he negate his opponent's claim, however. *Id.* Rather, the movant may discharge his burden by merely "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. When this burden is met, the non-moving party is then required "to go beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Thus, to defeat defendants' motion for summary judgment, plaintiff must come forward with specific evidence of every element essential to his substantive and procedural due process claims so as to demonstrate the existence of genuine issues for trial. *Id.* at 323, 106 S.Ct. at 2552.

### A. *Substantive Due Process.*

As previously noted, it is plaintiff's contention that defendant Hightower's decision to terminate his employment with the defendant county violated his right to substantive due process. Specifically, plaintiff contends that the stated reason for his discharge; i.e., excessive use of force, is pretextual and that the actual reason for the decision to terminate his employment was defendant Hightower's personal dislike for him. For the reasons that follow, the court rejects this argument.

The substantive component of the due process clause prohibits the states from engaging in certain activities regardless of the procedures used to implement them and thereby serves to prevent governmental power from being used for purposes of oppression. *Bendiburg v. Dempsey,* 707 F.Supp. 1318, 1324 (N.D.Ga.1989) (citing *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1985)). The rights protected by substantive due process; i.e., "substantive due process rights," are those rights created by the Constitution. *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J. concurring). They include rights established by the substantive provisions of the Bill of Rights; e.g., freedom of speech, as well as other rights deemed "fundamental" or "implicit in the concept of ordered liberty," *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); e.g., privacy rights. *See Rymer v. Douglas County,* 764 F.2d 796, 802 n. 5 (11th Cir.1985); *Brown v. Brienen,* 722 F.2d 360, 366–7 (7th Cir.1983); *Illinois Psychological Association v. Falk,* 818 F.2d 1337, 1342 (7th Cir.1987); *see also DeSisto College, Inc. v. Town of Howey-in-the-Hills,* 706 F.Supp. 1479, 1506 (M.D.Fla. 1989) (Black, J.). Because of the origin of substantive due process rights, the deprivation of such a right is actionable under section 1983 as a violation of substantive due process, regardless of the existence of any procedural safeguards established by the state for that purpose. *Bendiburg,* 707 F.Supp. at 1324; *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir. 1986) (en banc). Simply put, substantive due process rights are those which the state may not take away. *Taylor by and through Walker v. Ledbetter,* 818 F.2d 791, 794 (11th Cir.1987) (en banc).

In the present case, the constitutionally protected right claimed by plaintiff relates to his employment. A person's interest in a benefit such as government employment is a "property right" within the meaning of the due process clause "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1976). Unlike substantive due process rights, however, property rights are not created by the Constitution.[5] *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Rather, such rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Thus, where, as here, the applicable state law permits the dismissal of a government employee only for cause, the employee possesses a constitutionally protected property right in his continued employment. *Ogletree v. Chester*, 682 F.2d 1366, 1370 (11th Cir.1982) (citing *Brownlee v. Williams*, 233 Ga. 548, 212 S.E.2d 359 (1975)).

It is clear beyond question that a property right such as that possessed by plaintiff in his continued employment is protected by the procedural component of the due process clause. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Less clear, however, is the application of substantive due process to such state-created rights. Based on a review of the authorities cited above, it would appear that a deprivation of a non-substantive due process right such as a property right could never implicate the substantive component of the due process clause. Indeed, some courts have taken this position. *See, e.g., Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983); *Mangels v. Pena*, 789 F.2d 836 (10th Cir.1986); *McMaster v. Cabinet for Human Resources*, 824 F.2d 518 (6th Cir.1987). The Eleventh Circuit appears to have thus far taken a different approach, however.

Plaintiff cites *Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir.1982), for the proposition that the "deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis" gives rise to a substantive due process claim. 688 F.2d at 1332–33. In *Hearn*, the plaintiff's employment with the city of Gainesville was terminated when the city commission voted to eliminate a position within his department. It was determined at trial, however, that the decision to eliminate the plaintiff's position was merely pretext and that his discharge was actually caused by his supervisor's personal dislike for him. In this respect, the facts before the *Hearn* court are not unlike those alleged by plaintiff in the present action. There exists a controlling distinction, however. In *Hearn*, the termination of the plaintiff's employment was directly caused by a municipal official who was found to have provided the city commission with false information concerning the workload in the plaintiff's department and therefore the continued need to maintain the plaintiff's position. Thus, contrary to plaintiff's reading of the opinion, *Hearn* does not stand for the proposition that the deprivation of a property right, without more, can give rise to a substantive due process claim. Rather, the plaintiff in *Hearn* was permitted to maintain the action because the court found he suffered the deprivation of a *substantive* right. The court described "the underpinning of the constitutional violation," not as the deprivation of the plaintiff's property interest in his continued employment, but as "the false information provided by [the municipal official]." 688 F.2d at 1335. "Interjecting this [false] information into the city commission's decision making process stripped of genuineness the city's decision to eliminate the [plaintiff's position]." *Id.* This official's conduct—the malicious corruption of the government process—resulted in the deprivation of a property right *as well as* the deprivation of a right which can fairly be said to be implicit in th- --

**5.** Liberty interests protected by the fourteenth amendment may arise from either the Constitution or state law. *Hewitt v. Helms* 466, 103 S.Ct. 864, 868, 74 L.Ed.;

of ordered liberty. It was the infringement of this constitutionally-created right which gave rise to the plaintiff's substantive due process claim.

In the present case, plaintiff clearly possessed a protected property interest in his employment and has presented evidence arguably sufficient to create an issue of fact as to whether defendant Hightower disliked him. The first two elements of the *Hearn* standard have therefore been addressed. Unlike *Hearn*, however, there is no contention that defendant Hightower undertook to manufacture cause for plaintiff's discharge. On the contrary, the ground on which plaintiff's second discharge was based; i.e., the Davis/Fulghum incident, exists independent of any animosity on defendant Hightower's part. Indeed, it exists by virtue of plaintiff's own conduct as verified by individuals with no input in the decision making process. Absent evidence that defendant Hightower somehow generated the Davis/Fulghum incident as by, for example, encouraging false testimony, the court finds the *Hearn* decision inapplicable.

Under plaintiff's reading of the *Hearn* standard, an employee dismissed solely on the basis of his supervisor's personal dislike for him may assert a substantive due process claim in federal court, regardless of the availability of adequate state law remedies.[6] In addition to affording substantive due process protection to a right created by state law, such a result is inconsistent with the Supreme Court's admonition that the fourteenth amendment cannot be made "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Parratt*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).[7] Moreover, this result substantially trivializes substantive due process—which protections have heretofore been triggered only by government conduct so egregious as to "shock the conscience" or to "offend even hardened sensibilities." *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).[8]

This conclusion is consistent with Supreme Court precedent. In *Martin v. Harrah Independent School District*, 579 F.2d 1192 (10th Cir.1978), an Oklahoma school board voted not to renew a tenured teacher's employment contract because she refused to comply with the board's continuing education requirements. Oklahoma law required renewal unless the teacher was guilty of "immorality, wilful neglect of duty, cruelty, incompetency, teaching disloyalty to the American Constitutional system of government, or any reason involving moral turpitude." Following her termination, the teacher filed suit against the school board in federal court alleging, *inter alia*, that she had been deprived of a protected property interest in violation of substantive due process. The court of appeals agreed. The court held, "there is no rational basis for the board's action, whether viewed as an unreasonable classification or as arbitrary and capricious...." 579 F.2d at 1199. For this reason, the court concluded that the school board's actions deprived the teacher of the "substantive aspect" of her protected property interest in public employment. *Id.* at 1200. On certiorari, the Supreme Court reversed.

6. Though it has held that property rights are protected by substantive due process, *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1985), the new Fifth Circuit Court of Appeals has recognized the problems such a holding causes: Allowing a substantive due process claim for the deprivation of a property right where adequate state law remedies exist would effectively eviscerate the holding of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *Schaper*, 813 F.2d at 718. To avoid this result, the Fifth Circuit has made the holding *Parratt* and *Hudson* applicable to substantive due process claims as well as procedural due process claims, *id.*, a decision contrary to Eleventh Circuit precedent. *See Gilmere*, 774 F.2d at 1499–1500 (*Parratt* holding inapplicable to substantive due process claims).

7. Importantly, the *Parratt* court did not distinguish between procedural and substantive due process in making this admonition.

8. The Eleventh Circuit has applied the *Rochin* substantive due process standard to alleged deprivations of property rights in government employment. *See Lee v. Hutson*, 810 F.2d 1030 (11th Cir.1987).

Focusing on the appellate court's conclusion regarding the "substantive aspect" of the teacher's property interest, the court stated,

> [T]here is no claim that the interest entitled to protection as a matter of substantive due process was anything resembling 'the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life.' *Kelly v. Johnson*, [425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976)]; *see Roe v. Wade*, 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147] (1973); *Eisenstadt v. Baird*, 405 U.S. 438 [92 S.Ct. 1029, 31 L.Ed.2d 349] (1972); *Stanley v. Illinois*, 405 U.S. 645 [92 S.Ct. 1208, 31 L.Ed.2d 551] (1972); *Griswold v. Connecticut*, 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510] (1965); *Meyer v. Nebraska*, 262 U.S. 390 [43 S.Ct. 625, 67 L.Ed. 1042] (1923).

*Harrah Independent School District v. Martin*, 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1978).[9] The court believes the present action is in the same posture.

Based on the foregoing discussion, this court finds itself in agreement with a recent observation of the Seventh Circuit Court of Appeals:

> We have recognized that "if substantive constitutional rights are violated, the constitutionally recognized deprivation is complete at the time of the action, irrespective of the procedures available before or after the deprivation." Given the Supreme Court's recent decisions in *Par-*

*ratt* and *Hudson*,[10] however, we believe that in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim.

*Kauth v. Hartford Insurance Company of Illinois*, 852 F.2d 951, 958 (7th Cir.1988); *see also McMaster*, 824 F.2d at 523 (Nelson, J., concurring) (no substantive due process violation for deprivation of property interest absent infringement of constitutionally-created right as well); *Armstrong v. City of Arnett*, 708 F.Supp. 320, 326 (W.D.Okla.1989) (to recover on substantive due process claim, plaintiff must allege violation of a fundamental right).

One final Supreme Court decision must be addressed. In *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), the plaintiff contended that his dismissal from a medical school program deprived him of a property interest in violation of substantive due process. In rejecting the plaintiff's claim on the merits, the Court expressly assumed without deciding that the plaintiff possessed a constitutionally protected property interest in his continued enrollment in the program and that this property interest was protected by the substantive component of the due process clause. *Ewing*, 474 U.S. at 222–3, 106 S.Ct. at 511–12.[11]

---

**9.** The Court subsequently rejected the appellate court's finding that the school board's actions were arbitrary. 440 U.S. at 199. For this reason, at least one circuit court of appeals has interpreted *Martin* as recognizing a substantive due process right in public employment. *See Moore v. Warwick Public School District 29*, 794 F.2d 322, 329 (1986). This interpretation does not square with the above-quoted portion of the decision, however, nor is it consistent with the more recent opinion in *Regents of the University of Michigan v. Ewing*, discussed *infra*, wherein the Court expressly chose not to decide whether a deprivation of a property right could implicate substantive due process. 474 U.S. at 222–23, 106 S.Ct. at 511–12.

**10.** Under the holdings of *Parratt* and *Hudson*, a plaintiff cannot bring a procedural due process claim against a governmental body for the deprivation of a property interest if the governmental body being sued provides a meaningful post-deprivation remedy. Thus, no constitutional tort exists unless the state refuses to provide a meaningful post-deprivation remedy.

**11.** The Court determined that the facts of the case "afforded the most appropriate basis for [its] decision," and therefore declined to decide whether the deprivation of a property interest can constitute a substantive due process violation. In his concurring opinion, however, Justice Powell expressed his view that the property right asserted by the plaintiff—if such a right existed—was not entitled to substantive due process protection. *Id.* at 228–30, 106 S.Ct. at 515–16.

Despite the Court's express decision not to examine the scope of substantive due process, some courts have read the *Ewing* decision as implying that deprivations of state-created property rights can implicate substantive due process. *See, e.g., Schaper*, 813 F.2d at 716–17 & n. 8. Until the Supreme Court so rules, however, this court believes that it is unwise to "adopt a categorization of substantive due process that could effectively undermine established Supreme Court precedent requiring plaintiffs complaining of arbitrary deprivations of their property to seek redress through state remedies." *Kauth*, 852 F.2d at 957. To hold otherwise would be to permit litigants "to take what is essentially a procedural due process case and, through artful pleading, escape the commands of *Parratt* [and *Hudson* ]...." *Lee*, 810 F.2d at 1034.

Harmonizing this court's conclusions with the standard established by the *Hearn* court: (1) the deprivation of a property interest; (2) for an improper motive; (3) by means that are pretextual, arbitrary and capricious; and (4) without any rational basis, states a substantive due process claim provided some constitutionally-created right is thereby implicated. Thus, for example, the dismissal of a government employee in connection with an unreasonable search and seizure or in connection with the decision to abort an unwanted pregnancy may implicate substantive due process. *See, e.g., Hatcher*, 809 F.2d at 1555–59 (question of fact as to whether adverse employment action taken against plaintiff in retaliation for activity protected by first amendment); *Thompson v. Bass*, 616 F.2d 1259, 1267 (5th Cir.1980) (substantive due process violated where public employee discharged in retaliation for exercise of first amendment rights); *Brown*, 722 F.2d at 367 (dicta; substantive due process violated where government employer breaches contract with employee to induce him to give up his first amendment rights). On the other hand, the deprivation of a state-created property right, without more, does not give rise to a substantive due

process claim and is likewise subject to the holding of *Parratt*. Because plaintiff fails to allege that the challenged conduct infringed a constitutionally-created right, the present claim falls into the latter category. The court therefore concludes that plaintiff has failed to state a claim for the deprivation of substantive due process right. Accordingly, this aspect of defendants' motion for summary judgment is GRANTED.

### B. *Procedural Due Process.*

■ The procedural component of the due process clause requires that a deprivation of property be accompanied by notice and an opportunity for "some kind of hearing." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1984). Due process is satisfied so long as the discharged employee is afforded a minimal pre-deprivation hearing followed promptly by a more expansive post-termination procedure. *Id.* at 545, 105 S.Ct. at 1495. In this regard, it has previously been noted that plaintiff was given notice of his suspension and proposed discharge and the grounds therefor on May 17, 1988, was permitted to submit a written protest of his proposed discharge on May 20, 1988, and was discharged following defendant Hightower's consideration of his protest on May 23, 1988. In addition, plaintiff was afforded an opportunity subsequent to his discharge to challenge the evidence supporting defendants' decision to terminate his employment and to present evidence supporting his position that his discharge was improper. Plaintiff chose not to avail himself of the defendant county's post-deprivation procedures, however. Instead, plaintiff challenges the defendant county's deprivation procedures as lacking in due process.[12]

■ Plaintiff's procedural due process challenge to the defendant county's deprivation procedures concerns Rule 14 of the Rules and Regulations of the Cobb County Civil Service Board. Section 202B of this rule provides, "The [Civil Service] Board shall hear the evidence upon the charges

---

**12.** Such procedural due process claims are not subject to dismissal under *Parratt*.

and specifications as filed by the Appointing Authority <u>and shall not consider any additional evidence beyond the scope of the charges,</u> and may exclude evidence which is purely cumulative (emphasis added)." In light of the portion of Rule 14 underscored above, defendants presented no evidence at the August 17, 1982 Civil Service Board hearing other than that relevant to the charge before the Board at that time; i.e., plaintiff's refusal to submit to the polygraph examination. Defendants reason that any evidence submitted concerning the excessive force charge would be rejected under this rule. Plaintiff contends, however, that Section 202B of Rule 14 is designed to protect county employees from having to respond to charges unrelated to the charges upon which the adverse action was based, and that defendants improperly used the rule to "stockpile" charges for later use in an effort to ensure that plaintiff would be unable to regain his property right in his employment with the county. "Under defendants' interpretation ..., a Cobb County employee could face a series of terminations in which one unlawful reason for termination after another was used to keep the employee in limbo of separation from his property right to county employment for a virtually unlimited period of time." Response at 9.

The court finds the chronology of key events dispositive of plaintiff's procedural due process claim. The events relevant to plaintiff's first discharge occurred July 28, 1982, the date plaintiff was instructed to submit to the polygraph examination. When defendants considered that plaintiff had refused to submit to the examination, plaintiff was discharged the following day. On the other hand, the events relevant to

plaintiff's second discharge occurred over five months earlier. However, because Davis and Fulghum delayed the filing of their excessive force complaint by several months, and because such charges are inherently more complex, the Internal Affairs investigation was not completed until August 10, 1982, *almost two weeks after plaintiff had been discharged for insubordination.* Prior to completion of the Internal Affairs report, there existed no charge other than insubordination on which to base plaintiff's discharge, and therefore no charges to "stockpile" for use in the event plaintiff successfully appealed his discharge for insubordination. Had both charges been "ripe" at the time of plaintiff's first discharge, a strong argument could be made that due process would preclude the defendant county from basing a subsequent termination decision on the remaining charge. In the present case, however, plaintiff had been discharged for approximately two weeks when the second charge "ripened," and thus no adverse action could be taken against him.[13] Absent evidence that defendants purposefully delayed the Internal Affairs investigation of the Davis/Fulghum incident, plaintiff's "stockpiling" theory is unavailable to him. To hold otherwise would require governmental employers in similar situations to retain unqualified employees even in instances where, as here, sufficient cause for discharge is believed to exist. The fact that the second charge was unavailable at the time of plaintiff's first dismissal is not chargeable to defendants. Due process therefore poses no bar to defendants' subsequent use of the charge against plaintiff. For these reasons, this aspect of defendants' motion for summary judgment is GRANTED as well.[14]

---

**13.** The fact that the Internal Affairs investigation was complete prior to plaintiff's post-deprivation hearing before the Civil Service Board does not affect this reasoning. Rule 14 would not have permitted defendants to offer evidence relating to the Davis/Fulghum incident. In any event, the court does not believe that due process requires governmental employers to gather and present all conceivable grounds for discharge at an employee's post-deprivation hearing where those grounds were unavailable prior to the employee's discharge. While a "use it or lose it" rule may well prevail where multiple

grounds for discharge exist prior to the termination decision, the present case does not present such facts.

**14.** Summary judgment is appropriate for the defendant county for an additional reason. Such governmental entities may be held accountable for an alleged constitutional deprivation only if it resulted from municipal custom or policy. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 821–24, 105 S.Ct. 2427, 2435–37, 85 L.Ed.2d 791 (1985). Because section 1983 liability cannot be predicated upon *respondeat superi-*

## III. CONCLUSION.

In sum, defendants' motion for summary judgment is GRANTED. This action is hereby DISMISSED.

SO ORDERED.

or, it is imperative that the acts of the municipality be distinguished from the acts of its employees. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). In the present case, plaintiff has produced no evidence that the acts complained of were committed pursuant to a policy or custom of the defendant county.